## BATCHELOR *v.* KIRKBRIDE.

(*Circuit Court, D. New Jersey.* February 19, 1886.)

CONTRACT — WORK TO BE PAID FOR ON CERTIFICATE OF ARCHITECT — REFUSAL TO CERTIFY — RECOVERY OF QUANTUM MERUIT.

Where a contractor agrees to erect a building, to be paid for as the work progresses, on certificates signed by the supervising architect, and the architect fraudulently refuses to sign a certificate, and the contractor is unable to finish the building, he may recover of the owner on a *quantum meruit,* for the work actually done, although there was no collusion between the architect and such owner.[1]

On Motion for New Trial.
*S. H. Gray* and *A. C. Hartshorne,* for the rule.
*J. Frank Fort* and *A. Q. Keasbey, contra.*

NIXON, J. The case comes up on a rule to show cause why a new trial should not be granted. Several grounds are stated why the rule should be made absolute, but only one has suggested any serious question. The pleadings and evidence reveal the following state of facts: A contract was entered into between the plaintiff and the defendant for the construction of a hotel at Key East, on the New Jersey coast. By the terms of the agreement the builder was to be paid, during the progress of the work, the sum of $40,000, as follows: On November 15, 1883, $5,000; on December 15, 1883, $10,000; on January 15, 1884, $5,000; on February 15, 1884, $5,000; on March 15, 1884, $5,000; on May 15, 1884, $5,000; on June 15,

[1] See note at end of case.

1884, the remaining $5,000,—with the proviso added that, before each or any of said payments were made, the main building and other works of said building shall have sufficiently progressed to warrant such payment, the same to be decided by the architects, and their decision to be final on both parties. The first, second, and third payments, amounting to $20,000 were duly made; but those of February 15th and March 15th were withheld, the architects refusing to give their certificate that the work or the building was sufficiently progressed to warrant the same. The contract also contained the provision that, "should the contractor, at any time during the progress of the said works, refuse or neglect to supply a sufficiency of materials or workmen, the owner shall have power to provide materials and workmen, after three days' notice in writing being given, to finish the said works, and the expense shall be deducted from the amount of the contract." In consequence of the refusal of the architects to give a certificate in the months of February and March, the contractor was compelled substantially to stop the work on the buildings for want of money to pay for the material and the wages of the workmen. The owner gave the three days' notice specified in the contract for him to go on, and, on his failing so to do, took the work in his own hands, furnished materials, provided workmen, and finished the building. This suit was brought by the contractor upon the *quantum meruit*, on the allegation and assumption that the owner had unlawfully terminated the contract, and that he was entitled to recover payment for the work which he had actually done. The jury gave a verdict for the plaintiff for the sum of $13,168.54.

Under the charge of the learned circuit justice this verdict must be held to have established (1) that the work has sufficiently progressed in the months of February and March to entitle the plaintiff to the certificates; (2) that the architects fraudulently refused to give them; and (3) that the defendant failed to make the payments when the contractor demanded them, and was entitled to them under the contract, and wrongfully took the building out of his hands. The jury was advised by the court, on the trial, that unless these questions of fact were found for the plaintiff he could not recover in this action.

The counsel for the defendant, on the argument, insisted that a new trial should be granted, because there was no evidence of collusion between the owner and the architects: that no proof was offered that he induced them to withhold the certificates; and, even admitting that the architects acted fraudulently, the owner was not to be prejudiced by such action unless he was in some way a party to the fraud. The counsel for the plaintiff, on the other hand, contended that a fraudulent refusal of the architects to furnish a certificate, when the work was sufficiently progressed to call for one, whether in collusion with the owner or for any other cause not traceable to the influence and action of the contractor, justified the latter in not

going on with the work until paid; and when the owner, taking advantage of the fraudulent conduct of the architects, went into the possession of the unfinished building, and completed it, the contractor had a legal right to recover for the value of the work done up to the time when the owner took the charge and control.

We have thus presented for consideration an interesting, and, judging from the conflicting views in various cases which I have examined, I may add, unsettled, question, contracts of this character for the erection of buildings or the construction of other kinds of work are not common. As a rule, the owner has the means to pay, but wishes to guard against loss by paying no faster than the progress of the work warranted, and the contractor is dependent upon the moneys received during the progress of the building for the means of carrying the undertaking on to completion. A third party is therefore selected to determine when the payments ought to be made. In the present case the third party were the architects of the builder, and the contractor agreed to be bound by their judgment, not their *fraudulent* but *honest* judgment, in regard to the payment of the several installments provided for in the contract.

Evidence was offered tending or, at least, designed to show that during the progress of the work these architects complained to the contractor that they were not receiving enough money from the owner to pay them for superintending the buildings in their construction; that they had the opportunity, under the terms of the contract, to determine whether the work should cost him $40,000 or $60,000; and that it was to his interest, therefore, to pursue a liberal policy towards them if he wished them to decide any matters depending on their judgment in his favor. He naturally concluded, when the architects refused their certificates in the months of February and March, that they were not expressing their honest convictions, but were pursuing a course which they imagined would bring them compensation for changing their judgment. There is no pretense that the builder was in collusion with them. They were not acting to benefit him, but themselves. On the other hand, the testimony indicates that he was ready and willing to pay when the architects signed the certificates that the work was sufficiently advanced to render it safe for him to do so.

Whether the work had so far progressed as to entitle the contractor to have the certificates, and whether they were withheld for a fraudulent purpose, were questions of fact which the jury has determined in favor of the plaintiff, and I quite agree with the circuit justice in his charge that fraud by the arbiters, although not in collusion with the defendant, entitles the plaintiff to recover.

The only authority in direct conflict with this view is the statement of Addison in his valuable work on Contracts, p. *396. In discussing the subject of actions for wrongfully withholding certificates, he says, (section 861:) "But the employer is not responsible for any

misconduct of his architects or surveyor in refusing to certify, not brought about by his instrumentality or interference." The only authority he quotes or reference he makes in support of the proposition is the case of *Clark* v. *Watson*, 18 C. B. (N. S.) 278; S. C. 34 Law J. C. P. 148; and I do not think it supports the broad text of the learned writer. The action was there brought on the contract, which made it a condition precedent to payment that the surveyor of the defendants should give a certificate of the work done. No certificate had been given. The declaration alleged "that the said surveyor had not granted such certificates, but had wrongfully and improperly neglected and refused to do so." The declaration was demurred to, and on the argument the case seems to have turned on the question whether the allegation that the certificate was wrongfully and improperly withheld necessarily implied that it was fraudulently withheld. In support of the demurrer the counsel of the defendants said that "no fraud or collusion was charged." It is not alleged that the conduct of the surveyor was fraudulent. The allegation that he wrongfully and improperly neglected and refused to grant his certificate would be satisfied by showing that he had been guilty of a mere error in judgment. The court took the same view of the case. ERLE, C. J., among other things, said:

"If the plaintiff had intended to rely on withholding the certificate as a wrongful act on the part of the defendant, he should have stated how it was wrongful. This is an attempt on the part of the plaintiff to take from the defendant the protection of his surveyor, and to substitute for it the opinion of a jury."

And MILLES, J., in assenting to the opinion of the chief justice, said: "Consistently with the allegations in this declaration, the only wrong the surveyor has been guilty of may be an error of judgment."

The motion for a new trial is overruled.

NOTE.

It is said in Tetz v. Butterfield, (Wis.) 11 N. W. Rep. 531, that where a building contract provides for the acceptance of the architect, evidence is admissible to show that he acted collusively and in bad faith.

In Glacius v. Black, 50 N. Y. 145, where, by the terms of a contract for repairing a building, it was provided that the materials to be furnished should be of the best quality, and the workmanship performed in the best manner, subject to the acceptance or rejection of the architect, and all to be in strict accordance with the plans and specifications, the work to be paid for "when completely done and accepted," it was held that the acceptance by the architect did not relieve the contractors from their agreement to perform the work according to the plans and specifications; nor did his acceptance of a different class of work, or inferior materials, from those contracted for, bind the owner to pay for them; that the provision for acceptance was merely an additional safeguard against defects not discernible by an unskilled person.

It is said in Lynn v. Batimore & O. R. Co., 60 Md. 404, that on a contract by a corporation to purchase certain goods subject to inspection and approval by ifs agent, the corporation is liable if the agent fraudulently or in bad faith disapproves of the goods.